## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **C. R. PERKINS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Case No.: 4:21-cv-4189** |
| **v.** | § | |
| | § | |
| **STARBUCKS, INC. IND. and DBA** | § | |
| **STARBUCKS COFFEE COMPANY,** | § | |
| **STARBUCKS CORPORATION,** | § | |
| **and STARBUCKS COFFEE** | § | |
| **COMPANY,** | § | |
| | § | **TRIAL BY JURY DEMANDED** |
| **Defendants.** | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

COMES NOW, Plaintiff, C. R. PERKINS, through his undersigned attorneys, and complains of Defendants STARBUCKS, INC. IND. and dba STARBUCKS COFFEE COMPANY, STARBUCKS CORPORATION, and STARBUCKS COFFEE COMPANY and files this Original Complaint showing the Court as follows:

### INTRODUCTION

1. Plaintiff demands a jury trial in this case as to any and all issues triable to a jury.

2. Plaintiff files this Complaint and complains of discrimination on the basis of race under Title VII of the Civil Rights Act 42 U.S.C. § 2000e and under 42 U.S.C. § 1981; on the basis of religion under Title VII of the Civil Rights Act

42 U.S.C. § 2000e; and on the basis of disability under Americans with Disabilities Act As Amended ("ADAAA") 42 U.S.C. § 12101 et seq. and in retaliation for his complaints of discrimination on the basis of race under Title VII of the Civil Rights Act 42 U.S.C. § 2000e and under 42 U.S.C. § 1981; on the basis of religion under Title VII of the Civil Rights Act 42 U.S.C. § 2000e; on the basis of disability under Americans with Disabilities Act As Amended ("ADAAA") 42 U.S.C. § 12101 et seq.

3. This action seeks compensatory and punitive damages, lost wages (past, present, and future), attorneys' fees, taxable court costs, pre-judgment and post-judgment interest.

## PARTIES

4. Plaintiff, C. R. Perkins, is a resident of Houston, Texas.

5. Defendant, Starbucks, Inc. Ind. and dba Starbucks Coffee Company, is an international for-profit corporation formed in the State of Washington and registered to do business in Texas. Defendant may be served with process by mail or in person on its registered agent, Corporation Service Company DBA CSC – Lawyers Inc., at 211 E. 7th Street, Suite 620, Austin, TX 78701, in accordance with Fed. R. Civ. P. 4.

6. Defendant, Starbucks Corporation, is an international for-profit corporation formed in the State of Washington and registered to do business in Texas. Defendant may be served with process by mail or in person on its registered

agent, Corporation Service Company DBA CSC – Lawyers Inc., at 211 E. 7th Street, Suite 620, Austin, TX 78701, in accordance with Fed. R. Civ. P. 4.

7. Defendant, Starbucks Coffee Company, is an international for-profit corporation formed in the State of Washington and registered to do business in Texas. Defendant may be served with process by mail or in person on its registered agent, Corporation Service Company DBA CSC – Lawyers Inc., at 211 E. 7th Street, Suite 620, Austin, TX 78701, in accordance with Fed. R. Civ. P. 4.

## VENUE

8. Venue is appropriate in the United States District Court for the Southern District of Texas, Houston Division, because Plaintiff lives and worked in Houston, Texas, a substantial part of the events or omissions that gave rise to the claims in this Complaint happened in Houston, Texas, and the Defendants conducted business in Texas, as required under 28 U.S.C. §1391.

## JURISDICTION

9. This Court has original jurisdiction of this action, inter alia, pursuant to 28 U.S.C. §1331 (federal question jurisdiction), under 42 U.S.C. §2000e, *et seq.* and other statutes named herein.

10. The unlawful employment practices were committed within the jurisdiction of this Court.

## PROCEDURAL PREREQUISITES

11. All conditions precedent to the filing of this action have been met by Plaintiff. Plaintiff began his employment for defendant in 2008, was fired on October 15, 2020, immediately appealed, and was officially told that his appeal of the termination would not be granted by Defendants on February 18, 2021.

12. Defendants have well over 15 employees and had well over 15 employees through out the entirety of Plaintiff's employment with Defendants.

13. Plaintiff filed an inquiry with the Houston Equal Employment Opportunity Commission ("EEOC") office on May 12, 2021 and had an interview with an EEOC intake person on July 23, 2021.

14. Plaintiff filed a timely charge with the Houston EEOC office on September 28, 2021, in compliance with the 300-day deadline from the last discriminatory act on February 18, 2021, when his appeal was denied by Defendants.

15. The EEOC office in Houston issued a Notice of Right to Sue letter on September 30, 2021, entitling Plaintiff to file suit based on race, religion, and disability discrimination and retaliation against Plaintiff for complaining about race, religion, and disability discrimination, without ever conducting an investigation.

16. This lawsuit has been filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue letter from the EEOC.

## FACTS

17. Plaintiff C.R. Perkins ("Plaintiff") began working for Defendants Starbucks, Inc. Ind. and dba Starbucks Coffee Company, Starbucks Corporation, and

4

Starbucks Coffee Company (collectively "Defendants") in 2008, and aside from a break in employment between 2011 and 2012, Plaintiff worked for Defendants from 2008 until termination in October 2020.

18. Plaintiff identifies as a Black American.

19. Defendants have a history of racial discrimination towards Black employees, most recently settling with the EEOC in March 2021 for racial discrimination in Defendants' company-wide hiring and promotion practices.

20. Plaintiff, a Black, Jewish man, received mostly satisfactory-to-excellent performance reviews throughout his tenure prior to 2019, receiving at least 6 merit raises during his tenure.

21. Before 2019, Plaintiff had only received at most four write-ups from supervisors employed by Defendants, with the most recent one being in February 2016.

22. From 2013 through his termination, Plaintiff worked as a barista for Defendants.

23. Plaintiff became a "Coffee Master" and "Trainer" and received other accolades and achievements throughout his entire tenure working for Defendants.

24. Plaintiff also struggled with depression, anxiety, and ADHD prior to the beginning of his work for Defendants and mentioned these diagnoses to Defendants' managers, although Plaintiff was weary to request accommodations because of fear of retaliation or unfounded prejudice against him for asking for accommodations.

25. Plaintiff was qualified to do his job as a barista throughout his tenure with Defendants, including through his termination and his appeal of that termination with Defendants.

26. In late 2018, Plaintiff and the rest of his co-workers were informed that a new District Manager, Brittany Fiedler ("Fiedler"), would be taking over.

27. In April or May 2019, Defendants asked Plaintiff to temporarily work at the store located at the intersection of Louisiana Street and McGowen Street (2625 Louisiana Street) in Houston, Texas, which Plaintiff agreed to.

28. At that store, Plaintiff began working for Store Manager, Melissa Morris ("Morris"), a white, non-Jewish woman.

29. Within a month of working at this location, Defendants asked that, unless Plaintiff had specific objections, Plaintiff would be working at that location going forward instead of temporarily. Plaintiff, wanting to be a team player, agreed despite having small issues with his treatment at the store within the first month of starting there.

30. In August 2019, Plaintiff saw that his domestic partner was brutally assaulted in the parking lot of the Defendants' store while Plaintiff was inside the store just as he started his shift. Plaintiff took his domestic partner to the hospital where they took care of her, but she had permanent facial damage. This experience led to Plaintiff being diagnosed with PTSD.

31. In that same month, Plaintiff received a corrective action for contacting management regarding a customer having an issue despite the fact that

Defendants trained Plaintiff to contact management in this scenario. The management on duty at that store were Morris and Fielder.

32. At the store at the intersection of Louisiana Street and McGowen Street, Plaintiff noticed that non-white and/or darker-skinned workers, including him, received worse treatment than white and/or light-skinned workers, resulting in unequal number of write-ups, unequal enforcement of policies, and unequal scrutiny of work. Plaintiff also faced harassment and discrimination based on his disability, perceived disability, and/or record of disability during this time and through to his termination and the denial of his termination appeal.

33. On September 13, 2019, the disparate treatment created such a hostile work environment that Plaintiff felt it was necessary to document the blatant mistreatment. Plaintiff became more depressed at this time, causing him to struggle more with his college classes.

34. The incident on September 13, 2019, that spurred Plaintiff to start documenting the disparate treatment was when Plaintiff was denied a required work break despite all other workers receiving their breaks. This type of treatment, along with being yelled at and otherwise demeaned publicly, happened frequently over the following months.

35. In October 2019, Plaintiff had a conversation with Morris regarding Plaintiff's requests for time off to observe religious holidays in accordance with Plaintiff's Judaism.

36. While Morris originally approved the requests, Morris reached out to discuss Plaintiff's requests.

37. Morris began to argue with Plaintiff and stated that Plaintiff was taking too many days off and that she wanted to rescind the days that she had approved.

38. At this time, Plaintiff was only working part-time and had never had issues before with having the days approved for religious observation.

39. Before Plaintiff could respond, Morris said, "You are trying to take six weeks off."

40. Plaintiff, wanting again to be a team player and believing he had no choice, decided to surrender some of the approved days off that originally had been approved for him to use to observe religious holidays.

41. After Plaintiff agreed to cut down on his requested days off, Morris responded, "I can't believe you wanted to take 6 weeks off. I worked for Jews before, and they never took this much time off. You are not even a real Jew."

42. Plaintiff, who was one of very few Black Jews in the city, was perplexed by the comment and decided to keep quiet about the comment so as not to be in further trouble.

43. Unfortunately for Plaintiff, Defendants, through their agents, treated Plaintiff and other non-white/dark-skinned workers poorly.

44. From September 2019 through December 2019, Plaintiff and others were reprimanded for taking sick days, denied bathroom access, and actively denied in full or in part their required break time, all while Defendants treated the

other mostly light-skinned workers with friendliness and positivity, even when those co-workers did not show up for their scheduled shifts.

45. At one point during this period in September 2019, Morris subtracted Plaintiff's pay because Morris believed that Plaintiff took a longer-than-allowed 30-minute break, despite Plaintiff denying that he did and Morris not providing any evidence to show Plaintiff took a 30-minute break. Defendants have yet to pay Plaintiff for this subtraction.

46. Morris also admitted to Plaintiff that, if Plaintiff did not take Saturdays off for religious observance, Plaintiff would receive more work hours despite other worker who had similar availability restrictions as Plaintiff still got more hours than Plaintiff.

47. On November 27, 2019, Plaintiff heard Morris, after a Black regular customer left the store, ask another supervisor if the customer was ok, and the supervisor replied, "Don't worry, he is one of the good ones."

48. On December 19, 2019, Plaintiff made a complaint to corporate, who directed him to Fiedler.

49. Plaintiff contacted Fiedler multiple times before finally being able to set up a meeting with Fiedler and Morris on January 10, 2020.

50. Unfortunately for Plaintiff, the meeting did not address any of Plaintiff's complaints or grievances but instead became about Morris retaliating against Plaintiff by alleging false complaints against Plaintiff.

51. Plaintiff's complaints were dismissed despite Morris admitting that she treated Plaintiff differently to "set an example for the rest of the staff."

52. Fiedler ended the meeting with a promise to have a follow-up meeting no later than a month from then, but that meeting was denied by Morris.

53. In February 2020, Morris filed a retaliatory corrective action against Plaintiff despite the fact that the supposed violating action that Plaintiff took was done on behalf of Morris' instruction. Morris herself admitted that this supposed reason for the corrective action came from Plaintiff correctly following Morris' instruction.

54. In March 2020, after Fiedler ignored multiple attempts by Plaintiff to contact her about the discrimination, Plaintiff, while he and his co-workers were on COVID leave as the United States responded to the beginning of the COVID pandemic, finally received an email and then a phone call to address Plaintiff's grievances about discrimination.

55. Plaintiff stated specifically that he was being discriminated against, retaliated against, and harassed for his race/color and religion.

56. Fiedler recommended to Plaintiff that Plaintiff continue his COVID leave (he was out on COVID leave when she called), which she admitted would mean that Plaintiff would make less income, and assured Plaintiff of a thorough and complete investigation.

57. Plaintiff reminded Fiedler that Plaintiff had a witness, his domestic partner, to testify to much of the harassment and discrimination against Plaintiff.

58. Following up, a corporate representative directed Plaintiff to speak with Fiedler again.

59. In April 2020, Plaintiff confirmed his statements, provided specific documentary evidence of Plaintiff's discrimination complaints, and turned in a formal transfer notice to Fiedler, all of which went ignored.

60. In May 2020, the management team led by Morris, clearly irritated by Plaintiff's continued discrimination complaints, further harassed and discriminated against Plaintiff more intensely.

61. Plaintiff's requests for updates on the status of the investigation and a review of previous corrective actions went ignored.

62. A corporate representative once again directed Plaintiff to Fiedler and stated that Fiedler's perception held most of the weight of the determination of Plaintiff's discrimination grievances even if they were grievances against Fiedler.

63. In June 2020, after multiple attempts to contact Fiedler went ignored, Plaintiff contacted corporate, who directed Plaintiff to the human resources ("HR") area leader named Thy Mitchel ("Mitchel").

64. Plaintiff talked about Defendants' harassment and discrimination against Plaintiff based on his race and religion, as well as based on his disabilities, perceived disabilities, and/or record of disabilities. Mitchel seemed sympathetic to Plaintiff's distress and assured Plaintiff that Plaintiff would receive a resolution very soon.

65. In July 2020, 9 days after that call with Mitchel, Plaintiff finally heard from Fiedler in a 10-minute call where Fiedler stated that she was going on vacation for two weeks and would discuss the matter upon her return.

66. Fiedler requested Plaintiff to resend all of his documentation, but in passing, Fiedler mentioned that Plaintiff's previous discrimination grievances were all determined to be officially "unfounded" months prior.

67. Believing that the stress from the harassment had exacerbated his disabilities to the point that accommodations would help, Plaintiff finally and formally requested an ADA accommodation on June 29, 2020, for his anxiety, depression, and ADHD, plus an accommodation specifically for Plaintiff's PTSD from seeing his domestic partner beaten at the workplace, and an accommodation for his religious observances.

68. Plaintiff was then required to take 2 weeks off due to possible contraction of the Coronavirus in July 2020.

69. Fiedler informed Plaintiff that Plaintiff would be able to transfer only because of the ADA accommodations requests, which were all approved and were reasonable.

70. Fiedler then finally granted Plaintiff's transfer request, without giving Plaintiff a store to report to. The basic transfer information was not given to Morris, but Plaintiff was scheduled to return to the store on July 22, 2020.

71. That same month, Defendants' corporate division sent every store Black Lives Matter (BLM) t-shirts in response to the civil unrest of that summer,

with the heavy suggestion that workers should be allowed to wear them in support of BLM if they chose to.

72. Plaintiff requested a Starbucks BLM t-shirt from Fiedler with the intent of wearing one when Plaintiff returned to work.

73. However, Morris said that Fiedler told Morris that no workers at the stores in Fiedler's district would be allowed to wear the BLM t-shirt at work. In good-faith belief, Plaintiff believes Fiedler's district was the only one in the city not to allow workers to wear the t-shirt at work.

74. In late July or early August 2020, Fiedler stated she did not want to give Plaintiff any options outside of her district because she "did not want to trouble the other district managers with Plaintiff's ADA accommodations."

75. After almost 2 months of being willing but unable to work, Plaintiff was granted his only option of another store within the same district and encouraged to take the store at Pennzoil Place (Pennzoil) building which was about a mile from where his traumatic event occurred.

76. After meeting with the site manager of Pennzoil named Genet, Plaintiff was informed that they were fully staffed, and his hours would be less than 8 per week and that Plaintiff would have to find work at a different Starbucks to gain enough hours to keep his benefits.

77. Plaintiff reluctantly elected to drop his child from his medical benefits due to his reduced hours.

78. Plaintiff requested that Genet give him his Starbucks BLM t-shirt, which to this day he has never received.

79. Per Genet's COVID directives, Plaintiff was only to eat in the large back area, away from the rest of the other co-workers.

80. Plaintiff again requested Fiedler to review the corrective actions.

81. In September 2020, after a conversation with Fiedler, Genet suddenly began scrutinizing Plaintiff more closely.

82. Plaintiff was told that Plaintiff was going to be written up, and per Plaintiff's ADA request, Plaintiff asked for time to think before addressing the matter.

83. Unfortunately, Plaintiff's ADA request was immediately declined, and he was forced to discuss and answer Genet's interrogation immediately.

84. All other attempts to sit down and discuss were met with hostility.

85. On October 15, 2020, Plaintiff was terminated allegedly due to allowing his domestic partner to be in the backroom unauthorized, but that policy had not been enforced before, with Genet allowing her unauthorized family members into the back room.

86. When asked why he was being let go instead of just a written warning, Genet stated that Plaintiff's previous write-ups were the contributing factor that Plaintiff was terminated instead of written warning.

87. Plaintiff appealed and was informed by corporate that any of his grievances for discrimination, harassment and retaliation would need to go to the Senior HR manager that Plaintiff was submitting the appeal to.

88. On February 18, 2021, the Senior HR manager denied Plaintiff's appeal of termination and stated that the matter would not be reviewed further.

89. Plaintiff still deals with his anxiety, depression, PTSD, and ADHD to the day of the filing of this complaint but also is still qualified for the position Defendants fired Plaintiff from.

90. Defendants' listed reason for firing Plaintiff, the failure to comply with policy regarding unauthorized visitors, is merely pretext for firing him for his race, religion, and disability and in retaliation for his complaints about discrimination based on race, religion, and disability.

91. Defendants perceived Plaintiff as Black throughout Plaintiff's tenure working for Defendants, including at the time of his termination.

92. Defendants perceived Plaintiff as Jewish throughout Plaintiff's tenure working for Defendants, including at the time of his termination.

93. Plaintiff had a disability, a perceived disability, or a record of disability that was known to the Defendants due to Plaintiff's anxiety, depression, PTSD and ADHD, including at the time of termination.

94. Plaintiff has complained about Defendants' multiple incidences of mistreatment due to his race, religion, and disability, perceived disability, and/or record of disability.

95. Defendants have a record of mistreating Black employees.

96. Plaintiff was qualified to do his job at the time of his termination and when his appeal of termination was upheld.

## COUNT I: RELIGION DISCRIMINATION UNDER 42 U.S.C. §2000e, *et. seq.*

97. Plaintiff incorporates the allegations made in Paragraphs 1 through 96 herein.

98. Title VII prohibits employers from discriminating against employees based on their religion.

99. Defendants, by and through their agents and employees, engaged in the aforementioned practices, policies, customs, and usages made unlawful by 42 U.S.C. § 2000e, *et seq.*

100. Defendants discriminated against Plaintiff by their unlawful firing of him based on his religion of Judaism, as described herein.

101. Had Plaintiff not been Jewish, he would not have been forced to deal with the discriminatory conduct, been terminated, and had his termination upheld by Defendants.

102. As a direct and proximate result of the Defendants' conduct that violated 42 U.S.C. §2000e, *et. seq.*, Plaintiff suffered damages, including lost wages, emotional distress, pain and suffering, and attorneys' fees and costs.

103. Defendants' actions were intentional, willful, harsh, oppressive, reckless, and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress, pain, and suffering.  The wrongs done by the Defendants were aggravated by their willfulness, wantonness, and maliciousness for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by

the trier of fact to serve as punishment to deter Defendants from such conduct in similar situations.

104.          Defendants' actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC, to represent him in these proceedings.  Wherefore, Plaintiff seeks recovery of reasonable and necessary attorneys' fees.

**COUNT II: RACE DISCRIMINATION UNDER 42 U.S.C. §2000e, *et. seq.***

105.   Plaintiff incorporates the allegations made in Paragraphs 1 through 104 herein.

106.   Title VII prohibits employers from discriminating against employees based on their race.

107.   Defendants, by and through their agents and employees, engaged in the aforementioned practices, policies, customs, and usages made unlawful by 42 U.S.C. § 2000e, *et seq*.

108.   Defendants discriminated against Plaintiff by their unlawful conduct of harassing him and firing him based on his race, Black.

109.   Had Plaintiff not been Black, he would not have been discriminated against, been terminated, and have his termination upheld by Defendants.

110.   As a direct and proximate result of the Defendants' conduct that violated 42 U.S.C. §2000e, *et. seq.*, Plaintiff suffered damages, including lost wages, emotional distress, pain and suffering, and attorneys' fees and costs.

111.     Defendants' actions were intentional, willful, harsh, oppressive, reckless, and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress, pain, and suffering.  The wrongs done by the Defendants were aggravated by its willfulness, wantonness, and maliciousness for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendants from such conduct in similar situations.

112.                                Defendants' actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC, to represent him in these proceedings.  Wherefore, Plaintiff seeks recovery of reasonable and necessary attorneys' fees.

## **COUNT III: RACE DISCRIMINATION UNDER 42 U.S.C. § 1981**

113.     Plaintiff incorporates the allegations made in Paragraphs 1 through 112 herein.

114.     42 U.S.C. § 1981 prohibits employers from discriminating against employees based on their race.

115.     Title 42 U.S.C. §1981, *inter alia*, protects at-will employees from employment discrimination on the basis of race and national origin because at-will employment in Texas is a form of contract. *Fadeyi v. Planned Parenthood*

*Ass'n*, 160 F.3d 1048 (5th Cir. 1998).  Defendants offered to pay Plaintiff for his work, and Plaintiff accepted that offer by performing the work.  Thus, the parties entered into a contractual arrangement covered by 42 U.S.C. §1981.

116.     Defendants, by and through their agents and employees, engaged in the aforementioned practices, policies, customs, and usages made unlawful by 42 U.S.C. § 1981.

117.     Defendants discriminated against Plaintiff by firing him based on his race, Black.

118.     Had Plaintiff not been Black, he would not have been forced to deal with Defendants' discriminatory conduct and been terminated and have his termination upheld by Defendants.

119.     As a direct and proximate result of the Defendants' conduct that violated 42 U.S.C. § 1981, Plaintiff suffered damages, including lost wages, emotional distress, pain and suffering, and attorneys' fees and costs.

120.     Defendants' actions were intentional, willful, harsh, oppressive, reckless, and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress, pain, and suffering.  The wrongs done by the Defendants were aggravated by its willfulness, wantonness, and maliciousness for which the law allows the imposition of exemplary damages.  Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendants from such conduct in similar situations.

121.　　　　　　　　　Defendants' actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC, to represent him in these proceedings.  Wherefore, Plaintiff seeks recovery of reasonable and necessary attorneys' fees.

## COUNT IV: DISABILITY DISCRIMINATION UNDER ADAAA, 42 U.S.C. § 12101, *et seq*.

122.　　　Plaintiff incorporates the allegations made in Paragraphs 1 through 121 herein.

123.　　　Defendants, by and through their agents and employees, intentionally engaged in the aforementioned practices, policies, customs, and usages made unlawful by both the ADAAA (42 U.S.C. §12101, et seq.) and terminated Plaintiff because of his disabilities, perceived disabilities, and/or record of disabilities.

124.　　　Plaintiff was regarded by Defendants as having mental impairments.

125.　　　Plaintiff was a qualified individual who had a disability, who was regarded by Defendants as having a disability at the time of termination, or who had a record of disability known to Defendants prior to Plaintiff's termination.

126.　　　Defendants engaged in an adverse employment action against Plaintiff by terminating Plaintiff and upholding his termination after his appeal.

127.     Defendants terminated Plaintiff because of Plaintiff's disability, perceived disability, or record of disability, any, or all, of which were known to Defendants at the time of Plaintiff's termination by the Defendants.

128.     As a direct and proximate result of the aforementioned acts that violated the ADAAA, Plaintiff has suffered loss of wages, both in the past, present, and future, as well as compensatory damages, including but not limited to emotional distress.

129.     Defendants' actions were intentional, willful, harsh, oppressive, reckless, and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress, pain, and suffering.  The wrongs done by the Defendants were aggravated by its willfulness, wantonness, and maliciousness for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendants from such conduct in similar situations.

130.     Defendants' actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC. to represent him in these proceedings.  Wherefore, Plaintiff seeks recovery of reasonable and necessary attorneys' fees.

## COUNT V: RETALIATION FOR COMPLAINTS OF RELIGION DISCRIMINATION UNDER 42 U.S.C. §2000e, *et. seq.*

131.   Plaintiff incorporates the allegations made in Paragraphs 1 through 130 herein.

132.   Title VII prohibits employers from retaliating against employees for complaining about discrimination based on their religion.

133.   Defendants, by and through their agents and employees, engaged in the aforementioned practices, policies, customs, and usages made unlawful by 42 U.S.C. § 2000e, *et seq*.

134.   Defendants retaliated and discriminated against Plaintiff by firing him based on his complaints of Defendants' religious discrimination of Plaintiff.

135.   Had Plaintiff not complained about Defendants' religious discrimination, he would not have been terminated and have his termination upheld by Defendants.

136.   As a direct and proximate result of the Defendants' conduct that violated 42 U.S.C. §2000e, *et. seq.*, Plaintiff suffered damages, including lost wages, emotional distress, pain and suffering, and attorneys' fees and costs.

137.   Defendants' actions were intentional, willful, harsh, oppressive, reckless, and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress, pain, and suffering.  The wrongs done by the Defendants were aggravated by its willfulness, wantonness, and maliciousness for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by

the trier of fact to serve as punishment to deter Defendants from such conduct in similar situations.

138.               Defendants' actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC, to represent him in these proceedings.  Wherefore, Plaintiff seeks recovery of reasonable and necessary attorneys' fees.

## COUNT VI: RETALIATION FOR COMPLAINTS OF RACE DISCRIMINATION UNDER 42 U.S.C. §2000e, *et. seq.*

139.    Plaintiff incorporates the allegations made in Paragraphs 1 through 138 herein.

140.    Title VII prohibits employers from retaliating against employees for complaining about discrimination based on their race.

141.    Defendants, by and through their agents and employees, engaged in the aforementioned practices, policies, customs, and usages made unlawful by 42 U.S.C. § 2000e, *et seq*.

142.    Defendants retaliated and discriminated against Plaintiff by firing him for his complaints about Defendants' discrimination based on Plaintiff's race.

143.    Had Plaintiff not been Black or complained about the race discrimination, he would not have been terminated and have his termination upheld by Defendants.

144.     As a direct and proximate result of the Defendants' conduct that violated 42 U.S.C. §2000e, *et. seq.*, Plaintiff suffered damages, including lost wages, emotional distress, pain and suffering, and attorneys' fees and costs.

145.     Defendants' actions were intentional, willful, harsh, oppressive, reckless, and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress, pain, and suffering.   The wrongs done by the Defendants were aggravated by its willfulness, wantonness, and maliciousness for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendants from such conduct in similar situations.

146.     Defendants' actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC, to represent him in these proceedings.   Wherefore, Plaintiff seeks recovery of reasonable and necessary attorneys' fees.

## COUNT VII: RETALIATION FOR COMPLAINTS OF RACE DISCRIMINATION UNDER 42 U.S.C. § 1981

147.     Plaintiff incorporates the allegations made in Paragraphs 1 through 146 herein.

148.     42 U.S.C. § 1981 prohibits employers from discriminating against employees based on their race.

149.     Title 42 U.S.C. §1981, *inter alia*, protects at-will employees from employment discrimination on the basis of race and national origin because at-will employment in Texas is a form of contract. *Fadeyi v. Planned Parenthood Ass'n*, 160 F.3d 1048 (5th Cir. 1998).  Defendants offered to pay Plaintiff for his work, and Plaintiff accepted that offer by performing the work.  Thus, the parties entered into a contractual arrangement covered by 42 U.S.C. §1981.

150.     Defendants, by and through their agents and employees, engaged in the aforementioned practices, policies, customs, and usages made unlawful by 42 U.S.C. § 1981.

151.     Defendants retaliated and discriminated against Plaintiff by firing him for his complaints of Defendants' race discrimination directed towards him.

152.     Had Plaintiff not been Black or complained about the race discrimination, he would not have been terminated and have his termination upheld by Defendants.

153.     As a direct and proximate result of the Defendants' conduct that violated 42 U.S.C. § 1981, Plaintiff suffered damages, including lost wages, emotional distress, pain and suffering, and attorneys' fees and costs.

154.     Defendants' actions were intentional, willful, harsh, oppressive, reckless, and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress, pain, and suffering.  The wrongs done by

the Defendants were aggravated by its willfulness, wantonness, and maliciousness for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendants from such conduct in similar situations.

155.     Defendants' actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC, to represent him in these proceedings.  Wherefore, Plaintiff seeks recovery of reasonable and necessary attorneys' fees.

## COUNT VIII:  RETALIATION FOR COMPLAINTS OF DISABILITY DISCRIMINATION UNDER ADAAA, 42 U.S.C. § 12101, *et seq.*

156.     Plaintiff incorporates the allegations made in Paragraphs 1 through 155 herein.

157.     Defendants, by and through their agents and employees, intentionally engaged in the aforementioned practices, policies, customs, and usages made unlawful by both the ADAAA (42 U.S.C. §12101, et seq.) and terminated Plaintiff because of his disability, record of disability, and/or perceived disability.

158.     Plaintiff was regarded by Defendants as having mental impairments.

159.     Plaintiff was a qualified individual who had a disability, who was regarded by Defendants as having a disability at the time of termination, or

who had a record of disability known to Defendants prior to Plaintiff's termination.

160.     Defendants engaged in an adverse employment action against Plaintiff by terminating Plaintiff and upholding the termination after his appeal.

161.     Defendants retaliated and terminated Plaintiff because of Plaintiff's complaints regarding Defendants' discrimination of Plaintiff due to Plaintiff's disability, perceived disability, or record of disability, any, or all, of which were known to Defendants at the time of Plaintiff's termination by the Defendants.

162.     As a direct and proximate result of the aforementioned acts that violated the ADAAA, Plaintiff has suffered loss of wages, both in the past, present, and future, as well as compensatory damages, including but not limited to emotional distress.

163.     Defendants' actions were intentional, willful, harsh, oppressive, reckless, and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress, pain, and suffering.  The wrongs done by the Defendants were aggravated by its willfulness, wantonness, and maliciousness for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendants from such conduct in similar situations.

164.     Defendants' actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC to represent him in these proceedings.  Wherefore, Plaintiff seeks recovery of reasonable and necessary attorneys' fees.

## PRAYER FOR RELIEF

165.     WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendants be cited to appear and answer, and that on final hearing of this cause, Plaintiff has the following relief:

a. Back Pay;

b. Pre-Judgment Interest on Back Pay;

c. Front Pay;

d. Compensatory Damages, including but not limited to emotional distress;

e. Punitive Damages;

f. Injunctive and Affirmative Relief;

g. Lost Benefits;

h. Attorney's Fees and Costs;

i. Lost Wages, including from Defendants' agents conducting any improper pay deductions; and

j. Such other and further relief, at law or in equity, general or special, to which Plaintiff may show he is justly entitled.

## JURY TRIAL DEMANDED

166.     Plaintiff demands a trial by jury for all issues so triable.

WHEREFORE, Plaintiff requests damages and reasonable attorney fees from Defendants pursuant to 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1981, and 42 U.S.C. §12101, et seq., and any others applicable authority (statute/law, etc.), to be proven at the time of trial for all compensatory damages, exemplary damages, and attorneys' fees and costs along with any other relief that this Court finds reasonable under the circumstances.

Respectfully submitted,

**COANE AND ASSOCIATES, PLLC**

By:    /s/ Bruce A. Coane
**Bruce Coane**
Texas Bar No. 04423600
SD TX No. 7205
Email: bruce.coane@gmail.com
Stephen Rollins
SD Tex. # 3678193
TX Bar # 24123112
Email: Stephen.rollins@coane.com
Andrew Francis
S.D. Tex. #3699278
Texas Bar #24123604
Email: Andrew.francis@coane.com
5177 Richmond Ave., Suite 770
Houston, TX 77056
Phone: 713-850-0066
Fax: 713-850-8528
**Coane and Associates, PLLC**

***ATTORNEYS FOR PLAINTIFF***