United States District Court
Southern District of Texas
**ENTERED**
November 17, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| C.R. PERKINS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-4189 |
| | § | |
| STARBUCKS CORPORATION, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court in this employment discrimination case are a partial motion to dismiss and a supplemental partial motion to dismiss filed by Defendants Starbucks, Inc. Ind. and d/b/a Starbucks Coffee Company; Starbucks Corporation; and Starbucks Coffee Company (collectively "Starbucks"). The motions (Dkt. 8; Dkt. 19) are **GRANTED**.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff C.R. Perkins ("Perkins") worked at Starbucks for a total of 11 years, first from 2008 to 2011 and then from 2012 until he was terminated on October 15, 2020. (Dkt. 16 at pp. 5, 15). Perkins appealed his termination to a Senior Human Resources Manager, but the appeal was denied on February 18, 2021. (Dkt. 16 at p. 16).

Perkins alleges that he contacted the Equal Employment Opportunity Commission ("EEOC") on May 12, 2021. (Dkt. 16 at p. 4). In his live pleading, Perkins alleges that he "filed a detailed intake questionnaire with the [EEOC] on May 12, 2021" and "checked the box that indicated that he wanted to file a charge of discrimination." (Dkt. 16 at p. 4).

Perkins further alleges that he "scheduled an interview with an EEOC Officer at the earliest possible appointment slot, July 23, 2021." (Dkt. 16 at p. 4).

However, Perkins's description of his initial filing with the EEOC as an "intake questionnaire" on which he checked a particular box is incorrect, a point that Perkins concedes in his response to the motion to dismiss filed by Starbucks. (Dkt. 21 at p. 17). The term "intake questionnaire" refers to a specific EEOC form that asks employees to check one of two boxes in order to distinguish information requests from enforcement requests. *See Barr v. Stripes LLC*, No. 4:18-CV-296, 2020 WL 2576165, at *3–4 (S.D. Tex. May 21, 2020). One box states, "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above[,]" while the other box states, "I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC." *Equal Employment Opportunity Commission v. Vantage Energy Services, Inc.*, 954 F.3d 749, 755 & n.7 (5th Cir. 2020). The EEOC created the two boxes after the Supreme Court issued its opinion in *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008). *Barr*, 2020 WL 2576165 at *3–4.

In *Holowecki*, the Supreme Court noted that the EEOC serves the "distinct statutory functions of enforcing antidiscrimination laws and disseminating information about those laws to the public" and that the existence of those two functions necessarily creates a distinction between information requests and enforcement requests. *Holowecki*, 552 U.S. at 400. An enforcement request, unlike an information request, may trigger a duty to investigate on the part of the EEOC, so the proper characterization of requests is essential

to the EEOC's ability to fulfill its dual statutory roles. *Id.* at 401 ("If an individual knows that reporting this minimal information to the agency will mandate the agency to notify her employer, she may be discouraged from consulting the agency or wait until her employment situation has become so untenable that conciliation efforts would be futile. The result would be contrary to Congress' expressed desire that the EEOC act as an information provider and try to settle employment disputes through informal means."). An enforcement request will generally constitute an EEOC charge, while an information request generally will not. *Barr*, 2020 WL 2576165 at *3–4 ("An intake questionnaire does not qualify as an EEOC charge if the petitioner checks only the box requesting to speak with an EEOC employee."); *see also Holowecki*, 552 U.S. at 405 ("[T]he agency is not required to treat every completed Intake Questionnaire as a charge.").

Perkins's initial EEOC submission is attached to Starbucks's supplemental motion to dismiss; the submission, which is dated May 11, 2021, is an online inquiry form, not an intake questionnaire. (Dkt. 19-2). It does not contain any boxes that can be checked. (Dkt. 19-2). Moreover, the email from the EEOC confirming that Perkins had scheduled a July 23, 2021 telephone interview with an EEOC investigator makes clear that the online inquiry form is not an EEOC charge:

Before your interview, please visit EEOC Public Portal as soon as possible to provide additional information about your inquiry. Providing additional information is optional, but can help make the interview more productive and efficient. You may add or edit the additional information up until you have your interview with EEOC. The information you provide is confidential and will not be disclosed to your employer during an investigation.

**ANSWERING THESE QUESTIONS IS NOT THE SAME AS FILING A CHARGE OF DISCRIMINATION.**

A charge of discrimination is a signed statement asserting that an organization engaged in employment discrimination. It requests EEOC to take remedial action. The laws enforced by EEOC, except the Equal Pay Act, require you to file a charge before you can file a lawsuit for unlawful discrimination. There are strict time limits for filing a charge.

Dkt. 18-2 at p. 4.

In his online inquiry form, Perkins listed the "Date of Incident" as October 15, 2020, the date of his termination. (Dkt. 19-2 at p. 2).

Perkins had a telephone interview with Edith Banda ("Banda"), an EEOC investigator, on July 23, 2021. (Dkt. 8-1 at p. 5; Dkt. 16 at p. 4). Perkins alleges that, during the interview, Banda told him "that there was no urgency to file [his] EEOC Charge because the date of submission would relate back to his May 12 questionnaire, so he was inside the 300-day limit." (Dkt. 16 at p. 4).

Perkins filed an EEOC charge on September 28, 2021. (Dkt. 16 at p. 5). In his charge, Perkins indicated that the latest date on which he was subjected to discrimination was October 15, 2020, the date of his termination. (Dkt. 8-1 at p. 6). His charge did not mention that he appealed his firing to a Senior Human Resources Manager or that the appeal was denied on February 18, 2021. (Dkt. 8-1 at pp. 6–7).

Perkins received a right-to-sue letter from the EEOC on September 30, 2021, two days after he filed his EEOC charge. (Dkt. 16 at p. 5). Perkins then filed this lawsuit on December 28, 2021. (Dkt. 1). After Starbucks filed its first partial motion to dismiss, Perkins amended his complaint. (Dkt. 8; Dkt. 16). Starbucks filed a supplemental partial motion to dismiss to address the new allegations in Perkins's amended complaint. (Dkt. 19). Starbucks also filed a motion to stay discovery during the pendency of its partial

motions to dismiss, and the Court granted the motion[1] and stayed all discovery. (Dkt. 25; Dkt. 31).

In his live complaint, Perkins pleads claims under Title VII of the Civil Rights Act of 1964 ("Title VII"); 42 U.S.C. § 1981 ("Section 1981"); and the Americans with Disabilities Act ("ADA"). (Dkt. 16 at pp. 17–32). Perkins alleges that he is "a Black, Jewish man" and that Starbucks discriminated against him on the basis of both his race and his religion. (Dkt. 16 at pp. 17–32). Perkins further alleges that he suffered from "anxiety, depression, PTSD and ADHD" and that Starbucks discriminated against him based on those disabilities. (Dkt. 16 at pp. 17–32).

In its motions, Starbucks argues for dismissal of all of Perkins's claims under Title VII and the ADA. (Dkt. 18 at pp. 6–7). Starbucks argues that Perkins's Title VII and ADA claims stemming from his October 15, 2020 termination or events predating that termination are barred because Perkins did not file a charge with the EEOC within 300 days of October 15, 2020. (Dkt. 18 at pp. 6–7). Starbucks further argues that Perkins's Title VII and ADA claims stemming from his post-termination appeal are barred because "the appeal was never mentioned in his [EEOC] charge of discrimination." (Dkt. 24 at p. 4).

## LEGAL STANDARDS

### —*Federal pleading standards and Rule 12(b)(6)*

Rule 8 of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.

---

[1] While the motion to stay discovery was pending, this case was reassigned to the undersigned judge after Judge Werlein recused himself. (Dkt. 26).

R. Civ. P. 8(a)(2). A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests a

pleading's compliance with this requirement and is "appropriate when a defendant attacks

the complaint because it fails to state a legally cognizable claim." *Ramming v. United*

*States*, 281 F.3d 158, 161 (5th Cir. 2001). A complaint can be dismissed under Rule

12(b)(6) if its well-pleaded factual allegations, when taken as true and viewed in the light

most favorable to the plaintiff, do not state a claim that is plausible on its face. *Amacker v.*

*Renaissance Asset Mgmt., LLC*, 657 F.3d 252, 254 (5th Cir. 2011); *Lone Star Fund V*

*(U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). As the Fifth Circuit

has further clarified:

> A claim has facial plausibility when the plaintiff pleads factual content that
> allows the court to draw the reasonable inference that the defendant is liable
> for the misconduct alleged. This includes the basic requirement that the
> facts plausibly establish each required element for each legal claim.
> However, a complaint is insufficient if it offers only labels and conclusions,
> or a formulaic recitation of the elements of a cause of action.
> *Coleman v. Sweetin*, 745 F.3d 756, 763–64 (5th Cir. 2014) (quotation marks
> and citations omitted).

When considering a motion to dismiss under Rule 12(b)(6), the Court's review is

limited to the complaint; any documents attached to the complaint; any documents attached

to the motion to dismiss that are central to the claim and referenced by the complaint; and

matters subject to judicial notice under Federal Rule of Evidence 201. *Allen v. Vertafore,*

*Inc.*, 28 F.4th 613, 616 (5th Cir. 2022); *George v. SI Group, Inc.*, 36 F.4th 611, 619 (5th

Cir. 2022). If the plaintiff's allegations are contradicted by facts disclosed by a document

attached to the complaint or by facts disclosed by a document attached to the motion to

dismiss that is central to the claim and referenced by the complaint, then the plaintiff's

contradicted allegations are not accepted as true. *Carter v. Target Corp.*, 541 Fed. App'x 413, 417 (5th Cir. 2013) (refusing to accept as true factual allegations that were contradicted by the plaintiff's EEOC charging documents, which the defendant had attached to its motion to dismiss) ("These issues are central to Carter's pleadings, and her failure to include them does not allow her complaint to bypass Target's motion to dismiss unexamined. We will review Target's motion to dismiss with the benefit of Carter's EEOC and LCHR charges. . . . Because Charge 23 does not exist, we need not accept as true Carter's assertions that she filed and received her right-to-sue notice for Charge 23.") (citation omitted).

—*Exhaustion of administrative remedies*

Under both Title VII and the ADA, a plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory act. *Fort Bend County, Texas v. Davis*, 139 S. Ct. 1843, 1846 (2019) (Title VII); *Ramirez v. City of San Antonio*, 312 F.3d 178, 181 (5th Cir. 2002) (ADA). "The time period generally begins to run when the employee receives notice of the allegedly discriminatory decision, not when the employment actually ceases." *Conaway v. Control Data Corp.*, 955 F.2d 358, 362 (5th Cir. 1992). Failure to file a charge with the EEOC and exhaust administrative remedies before filing a Title VII action or an ADA action will result in dismissal. *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788–89 (5th Cir. 1996). If the plaintiff's failure to exhaust administrative remedies is established by the pleadings and the other properly considered documents, then dismissal under Rule 12(b)(6) is appropriate. *Carter*, 541 Fed. App'x at 417; *see also Clark v. Amoco Production Co.*, 794 F.2d 967, 970 (5th Cir. 1986) ("[A]

claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings.").

## ANALYSIS

The Court now turns to the pending motions to dismiss. Starbucks argues that Perkins's Title VII and ADA claims stemming from his October 15, 2020 termination or events predating that termination are time-barred because Perkins did not file a charge with the EEOC on or before August 11, 2021, which was 300 days after October 15, 2020. (Dkt. 18 at pp. 5–7). Starbucks further argues that Perkins's Title VII and ADA claims stemming from his post-termination appeal, though not barred by the 300-day deadline, are nevertheless barred because "the appeal was never mentioned in his [EEOC] charge of discrimination" and he accordingly did not exhaust his administrative remedies with regard to those claims. (Dkt. 24 at p. 4).

In response to the contention that his termination and pre-termination claims are time-barred, Perkins makes the following arguments: (1) his EEOC charge was timely as to his termination and pre-termination claims because it relates back to the online inquiry form that he submitted to the EEOC on May 11, 2021; (2) the "continuing violation" doctrine renders all of his claims timely because the February 18, 2021 denial of his appeal "was the final act in the series of discriminatory acts that [Perkins] faced[;]" and (3) his 300-day deadline to file an EEOC charge should be equitably tolled because Banda told him that his EEOC charge would relate back to his initial submission to the EEOC. (Dkt. 21 at pp. 16–24). In response to the contention that his post-termination appeal claims are barred, Perkins argues that he exhausted his administrative remedies with regard to claims

stemming from his post-termination appeal because, though he did not discuss the appeal in his EEOC charge, a reasonable investigation of his EEOC charge would have encompassed the denied appeal. (Dkt. 21 at pp. 16–24).

The Court agrees with Starbucks and disagrees with Perkins. The Court will address each of Perkins's arguments in turn.

*—Perkins's EEOC charge does not relate back to the May 11, 2021 online inquiry form.*

Perkins first contends that his EEOC charge was timely filed as to his termination and pre-termination claims because it relates back to the online inquiry form that he submitted to the EEOC on May 11, 2021. (Dkt. 21 at pp. 16–19). The Court disagrees.

An untimely EEOC charge can relate back to a timely EEOC filing if the earlier filing itself would have been "sufficient as a charge" but for a "technical" defect such as being unverified or unsigned. *Vantage*, 954 F.3d at 756–57. In order to qualify as a charge, an earlier filing, among other things, must be in writing and "must be reasonably construed as a request for the [EEOC] to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Holowecki*, 552 U.S. at 396, 402; *see also Vantage*, 954 F.3d at 753–54. "[T]he filing must be examined from the standpoint of an objective observer to determine whether, by a reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial processes[.]" *Holowecki*, 552 U.S. at 402. "A review of the case law in this circuit applying *Holowecki* demonstrates courts analyzing intake questionnaires and any accompanying documents consistently identify a specific statement indicating a request to

act when they deem a particular filing a charge. . . . In cases where there is an absence of any statement indicating a request for remedial action, courts in this circuit have held the intake questionnaire is not a charge and dismissed the plaintiff's claims." *Freeland v. Coors of Austin, L.P.*, No. A-14-CA-443, 2015 WL 4744362, at *8 & n.4 (W.D. Tex. Aug. 10, 2015) (collecting cases); *see also, e.g., Angelina v. University of Mississippi Medical Center*, No. 3:14-CV-789, 2015 WL 417846, at *3 (S.D. Miss. Jan. 30, 2015) (concluding that a sixteen-page fax to the EEOC providing basic intake information and describing the alleged unlawful employment practices did not constitute a charge because "[n]owhere in her submission" did the plaintiff "request any action or otherwise activate the EEOC's machinery and remedial processes") (brackets and quotation marks omitted).

Under the *Holowecki* standard, Perkins's May 11, 2021 online inquiry form does not constitute a charge. The inquiry form does not contain any specific statement that can reasonably be construed as a request for the EEOC to take remedial action to protect Perkins's rights or otherwise settle a dispute between Perkins and Starbucks. (Dkt. 19-2). Although Perkins scheduled his interview with Banda using the inquiry form, the scheduling of that interview alone does not make the inquiry form a charge. *Barr*, 2020 WL 2576165 at *3–4 ("An intake questionnaire does not qualify as an EEOC charge if the petitioner checks only the box requesting to speak with an EEOC employee.").

Perkins argues that the form constitutes a charge because he "expressed to the EEOC that he had several letters, emails, and a spreadsheet" documenting the alleged discrimination and because he "expressed his desire for the EEOC to take remedial action and file a charge of discrimination for him during his intake interview[.]" (Dkt. 21 at p.

18). However, the inclusion of or reference to supporting documentation, without an explicit request for the EEOC to take remedial action, does not make a filing a charge. *Nadesan v. Texas Oncology PA*, No. 2:10-CV-239, 2011 WL 147570, at *5 (N.D. Tex. Jan. 18, 2011) ("Attached to the questionnaire, Nadesan included a detailed statement outlining her allegations. Unlike the filing in [*Holowecki*]*,* though, Nadesan's supplement does not include any language requesting agency action."). Moreover, Perkins does not cite to any authority allowing him to circumvent the requirement that a charge be in writing by pointing to oral statements that he allegedly made to an EEOC investigator. *Cf. Stevenson v. Delta Airlines, Inc.*, No. 17-6003, 2019 WL 2603635, at *5 (E.D. La. June 25, 2019) ("Ms. Stevenson did not check the box authorizing the EEOC to look into the discrimination and consenting to have her identity disclosed to her employer. . . . Ms. Stevenson has not cited a case where a verbal conversation regarding the filing of a charge would be sufficient to constitute a charge of discrimination where the intake form did not indicate an intent to do so.").

The Court concludes that Perkins's May 11, 2021 online inquiry form did not constitute a charge to which Perkins's late-filed charge can relate back.

*—Perkins's appeal of his termination does not implicate the continuing violation doctrine.*

Perkins next contends that the continuing violation doctrine renders all of his claims timely because the February 18, 2021 denial of his appeal "was the final act in the series of discriminatory acts that [Perkins] faced." (Dkt. 21 at p. 20). The Court disagrees. The denial of Perkins's appeal was a discrete act that did not implicate the continuing violation

doctrine. Accordingly, the continuing violation doctrine does not save Perkins's claims stemming from his October 15, 2020 termination or events predating that termination.

Under the continuing violation doctrine, "a plaintiff is relieved of establishing that all of the alleged discriminatory conduct occurred within the actionable period, if the plaintiff can show a series of related acts, one or more of which falls within the limitations period." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004). However, when discussing the continuing violation doctrine in the context of employment discrimination law, the Supreme Court has drawn a "direct contrast" between, on the one hand, "discrete acts" that are "easy to identify" such as "termination, failure to promote, denial of transfer, or refusal to hire" and, on the other hand, "[h]ostile environment claims" that "involve[] repeated conduct" and are "based on the cumulative effect of individual acts" that "may not be actionable on [their] own[,]" such as "racial jokes, . . . racially derogatory acts, . . . negative comments regarding the capacity of [people of a certain race] to be supervisors, and [the use of] racial epithets." *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15, 120 (2002). Discrete acts do not implicate the continuing violation doctrine; they "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id*. at 113. Moreover, "discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." *Id*. at 112.

The denial of Perkins's appeal of his termination was, like his termination itself, a discrete act. Hostile work environment claims that implicate the continuing violation doctrine involve, as Justice O'Connor aptly phrased it, "a general atmosphere of discrimination not completely reducible to particular discriminatory acts[.]" *Id*. at 124

(O'Connor, J., concurring and dissenting); *see also Igwe v. Menil Foundation Inc.*, No. 4:17-CV-3689, 2020 WL 7024374, at *3–4 (S.D. Tex. Nov. 30, 2020) ("[A] continuing violation is unlawful only by reference to a pattern of behavior. . . . [M]inor insults and the imposition of workplace inconveniences are only actionable when they occur repeatedly over a prolonged period of time."). With hostile work environment claims, "[t]he 'unlawful employment practice' therefore cannot be said to occur on any particular day." *Morgan*, 536 U.S. at 115. By contrast, the denial of Perkins's appeal of his termination was, like his termination itself, a single, easily identifiable act that took place on an ascertainable date, February 18, 2021. *Id*. at 110 ("A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'"); *see also Jackson v. Lehigh Valley Physicians Group*, No. 08-3043, 2009 WL 229756, at *5 (E.D. Pa. Jan. 30, 2009) ("[T]he effective denial of a grievance hearing is the sort of 'discrete act' that likely does not constitute a continuing violation."). Accordingly, the Court concludes that the denial of Perkins's appeal was a discrete act that did not implicate the continuing violation doctrine, and the continuing violation doctrine does not save Perkins's claims stemming from his October 15, 2020 termination or events predating that termination. *Morgan*, 536 U.S. at 112 ("[D]iscrete acts that fall within the statutory time period do not make timely acts that fall outside the time period.").

*—Perkins has not met his burden to plead facts showing that equitable tolling is appropriate.*

Perkins next argues that his 300-day deadline to file an EEOC charge should be equitably tolled because Banda told him that his EEOC charge would relate back to his initial submission to the EEOC. (Dkt. 21 at pp. 23–24). The Court disagrees.

The deadline to file an EEOC charge is subject to equitable doctrines such as tolling or estoppel. *Manning v. Chevron Chemical Co., LLC*, 332 F.3d 874, 880 (5th Cir. 2003). "However, these equitable doctrines are to be applied sparingly." *Id*. (quotation marks omitted). A party who invokes equitable tolling bears the burden of demonstrating that it applies. *Id*.

The Fifth Circuit has identified "the EEOC's misleading the plaintiff about his rights" as a basis for equitable tolling. *Id*.  Specifically, courts in the Fifth Circuit "apply equitable tolling when an employee seeks information from the EEOC, and the organization gives the individual *incorrect information* that leads the individual to file an untimely charge." *Id*. at 881 (emphasis in *Manning*). "It is not sufficient for [the employee] to show that the EEOC failed to give him some relevant information; he must demonstrate that the EEOC gave him information that was affirmatively wrong." *Ramirez*, 312 F.3d at 184; *see also Conaway*, 955 F.2d at 363 (holding that "an accurate, but incomplete, oral statement by the EEOC" is not a basis for equitable tolling). Furthermore, the employee has the burden to demonstrate that the information provided by the EEOC was incorrect when examined in light of the information provided *to* the EEOC by the employee; equitable tolling is not appropriate if the EEOC's alleged misstatement was caused by the

employee's giving the EEOC incorrect or incomplete information himself. *Ramirez*, 312

F.3d at 184–85 ("Based on the little information Ramirez has provided, we cannot say that

the EEOC affirmatively misled him about the nature of his rights. If he indeed told the

EEOC *only* that CPS transferred him, then the EEOC correctly told him that he would not

have a claim until CPS did something like removing his title or his pay.") (quotation marks

and brackets omitted; emphasis in *Ramirez*).

Even when his pleadings are viewed in the light most favorable to him, Perkins has

not pled sufficient facts to demonstrate that equitable tolling is appropriate. In his amended

complaint, Perkins alleges that Banda told him during a telephone interview "that there

was no urgency to file [his] EEOC Charge because the date of submission would relate

back to his May 12 questionnaire, so he was inside the 300-day limit" and that this

statement was incorrect.   (Dkt. 16 at p. 4). However, nowhere does Perkins plead that he

provided accurate, complete information to the EEOC regarding the questionnaire.

*Ramirez*, 312 F.3d at 184–85. Nor can the Court conclude from the pleadings that the

EEOC affirmatively misled him regarding the nature of his rights. In his amended

complaint, Perkins describes his online submission as an "intake questionnaire" on which

he had "checked the box that indicated that he wanted to file a charge of discrimination."

(Dkt. 16 at p. 4). [2] If Perkins indeed told Banda the same thing about the questionnaire that

he told the Court in his amended complaint, then the information that Banda gave him

---

[2]  As noted above, in briefing filed after the filing of the amended complaint, Perkins now concedes
that this description of his online submission is inaccurate—the EEOC's file shows that Perkins
actually submitted a different type of form (an online inquiry form) that had no boxes to check.
(Dkt. 19-2; Dkt. 21 at p. 17).

about relation back would have been accurate in light the information that Perkins provided to Banda—and thus, equitable tolling would not apply. *See Barr*, 2020 WL 2576165 at *3–4 ("Since *Holowecki*, courts have generally held that filing an intake questionnaire with the EEOC qualifies as filing an EEOC charge, if the complainant checks the box that states 'I want to file a charge of discrimination . . . .'"); *Vantage*, 954 F.3d at 756–57 ("Poston's EEOC intake questionnaire was sufficient as a charge and, although verified outside of the filing period, was 'timely' by virtue of the relation-back regulation."). While Banda's assurance turned out to be incorrect, that error was attributable to Perkins' misunderstanding of the questionnaire, not to any mistake on Banda's part. Perkins would have been entitled to equitable tolling had Banda provided him inaccurate information, but equitable tolling is not available to Perkins merely to remedy his own errors. Accordingly, even when his pleadings are viewed in the light most favorable to him, Perkins has not carried his burden to plead sufficient facts to demonstrate that equitable tolling is appropriate. The Court will not apply equitable tolling.

> —*Perkins did not exhaust his administrative remedies with regard to his post-termination appeal.*

Perkins next argues that he exhausted his administrative remedies with regard to claims stemming from his post-termination appeal because, though he did not discuss the appeal in his EEOC charge, a reasonable investigation of his EEOC charge would have encompassed the denied appeal. (Dkt. 21 at pp. 22–23). The Court disagrees.

A Title VII or ADA lawsuit may "extend as far as, but no further than, the scope of the EEOC investigation which could reasonably grow out of the administrative charge."

*Fine v. GAF Chemical Corp.*, 995 F.2d 576, 578 (5th Cir. 1993) (quotation marks omitted). In order to determine whether the plaintiff has exhausted administrative remedies, the district court must "engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006).

Perkins contends that, "while [he] did not include the word 'appeal' in his official EEOC charge, he included enough facts that an investigation would reasonably uncover the denied appeal and scrutinize whether the appeal procedure reflected any of the discriminatory animus exhibited from prior acts in the series of events that impacted [him]." (Dkt. 21 at p. 22). Specifically, Perkins argues that his reference in his EEOC charge to having "filed several grievances with Human Resources" brought his post-termination appeal within the scope of a reasonable EEOC investigation. (Dkt. 8-1 at p. 6; Dkt. 21 at p. 22). Perkins also notes that he mentioned the post-termination appeal in his May 11, 2021 online inquiry. (Dkt. 21 at pp. 22–23).

The Court finds Perkins's arguments unpersuasive. To begin with, the Fifth Circuit has noted that "the actual scope of the EEOC's investigation . . . is clearly pertinent to an exhaustion inquiry[,]" *McClain v. Lufkin Industries, Inc.*, 519 F.3d 264, 274 (5th Cir. 2008), and there are no facts pled or documents referenced indicating that the EEOC investigated any event that took place after Perkins's termination on October 15, 2020. The EEOC's notice to Starbucks of Perkins's charge stated that Perkins's charge covered acts "alleged to have occurred on or about Sep 13, 2019 through Oct 15, 2020." (Dkt. 8-1 at p. 2). The EEOC's date range makes sense: Perkins himself stated in his EEOC charge that

the discrimination about which he complained took place between September 13, 2019 and October 15, 2020. (Dkt. 8-1 at p. 6). Perkins's charge did not include any specific dates for the grievances that he claimed to have filed and did not state that he filed any grievances after October 15, 2020. (Dkt. 8-1). Perkins's written account of the alleged discrimination in his charge ended with his termination. (Dkt. 8-1). The EEOC's notice to Starbucks did not include the May 11, 2021 online inquiry form. (Dkt. 8-1). There is no sign that Perkins's post-termination appeal denial was part of the EEOC's investigation.

Moreover, the Court is not persuaded that the post-termination appeal denial fell within the scope of a reasonable EEOC investigation more generally. The appeal denial took place seven months before Perkins filed his charge but was not specifically referenced in the charge. Additionally, the appeal denial took place four months after Perkins's termination, and the date of Perkins's termination was the latest date on which Perkins's charge said that any discrimination took place. Even giving the charge a liberal construction, the post-termination appeal could not reasonably be expected to be within the scope of an EEOC investigation. *Cf. Fine*, 995 F.2d at 577–78 ("Although the EEOC complaint makes no mention of a job application or rejection in the fall of 1990, Fine asks the court to liberally construe her EEOC charge. . . . Fine's charges drew the EEOC's attention to an application she allegedly made in February 1990, and referred to events even further in the past. We conclude that the events now cited could not reasonably be expected to be within the scope of the EEOC investigation."); *Anderson v. Venture Express*, 694 Fed. App'x 243, 247 (5th Cir. 2017) ("Given that Anderson filed his EEOC charge after his termination, an investigation into retaliation could not be reasonably

expected to grow out of the initial EEOC charge. Therefore, his failure to allege retaliation in his EEOC charge supports dismissal of this claim for failure to exhaust administrative remedies.").

Finally, the fact that Perkins mentioned the post-termination appeal in his May 11, 2021 online inquiry is irrelevant because, as discussed earlier, the online inquiry form did not constitute an EEOC charge and the EEOC did not include the online inquiry form with its notice to Starbucks. *Ernst v. Methodist Hospital System*, 1 F.4th 333, 338–39 (5th Cir. 2021) (affirming dismissal of claims that were included on an unverified intake questionnaire but were not included on the employee's EEOC charge) ("Because the intake questionnaire was not verified, and Houston Methodist did not receive notice of its additional allegations during the EEOC investigation, Ernst failed to exhaust administrative remedies."); *see also Teffera v. North Texas Tollway Authority*, 121 Fed. App'x 18, 21 (5th Cir. 2004) (affirming dismissal of retaliation claim when plaintiff checked retaliation box only on the EEOC intake form but not on the EEOC charge).

Based on the facts pled by Perkins and the EEOC's file, the Court concludes that Perkins did not exhaust his administrative remedies with regard to the claims stemming from his post-termination appeal.

## CONCLUSION

The partial motion to dismiss and supplemental partial motion to dismiss filed by Defendants Starbucks, Inc. Ind. and d/b/a Starbucks Coffee Company; Starbucks Corporation; and Starbucks Coffee Company (Dkt. 8; Dkt. 19) are **GRANTED**.

SIGNED at Houston, Texas, on November 17, 2022.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE